IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WILLIE J. W.[1],                                              No. 6:18-cv-01545-HZ

         Plaintiff,

  v.

COMMISSIONER, SOCIAL                              OPINION & ORDER
SECURITY ADMINISTRATION,

         Defendant.

Sherwood J. Reese
DREW L. JOHNSON, P.C.
1700 Valley River Drive
Eugene, Oregon 97401

      Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936

Heather L. Griffith
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S/ 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Willie W. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for an award of benefits.

## PROCEDURAL BACKGROUND

     Plaintiff applied for SSI on May 22, 2012, alleging an onset date of January 5, 2006. Tr. 189-94. His application was denied initially and on reconsideration. Tr. 103-06, 110-11. On November 5, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 37-65. On January 15, 2015, the ALJ found Plaintiff not disabled. Tr. 10-30. After the Appeals Council denied review, Tr. 1-7, Plaintiff filed an action in this Court.

     On August 1, 2017, Magistrate Judge Russo issued an Opinion & Order reversing the ALJ's decision and remanding for additional proceedings. Tr. 598-611. Upon remand, the ALJ conducted a second hearing on February 22, 2018, at which Plaintiff appeared with counsel. Tr.

565-89.  On April 20, 2018, the ALJ again found Plaintiff not disabled.  Tr. 543-64.[2]  Plaintiff

filed a new action in this Court challenging the second ALJ decision.  In response, Defendant

agrees that the case should be remanded.  The parties dispute the nature of the remand.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having bipolar disorder, depression, post-traumatic

stress disorder (PTSD), and back pain.  Tr. 206.  At the time of the second hearing, he was forty-

one years old.  Tr. 189 (showing date of birth).  He is a high school graduate, attended some

college, and has past relevant work experience as a recycling laborer, pizzeria manager, and

shipping supervisor.  Tr. 207, 278, 290.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

Disability claims are evaluated according to a five-step procedure.  *See Valentine v.*

*Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).  The claimant bears the ultimate burden of proving disability.

*Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

---

[2] In the April 20, 2018 decision, the ALJ mentioned that in May 2016, Plaintiff filed a
second SSI application.  Tr. 546. Because the second application alleged the same onset date and
"deal[t] with the same issues during overlapping time periods," the ALJ consolidated the
previous application and the second application into one case with one evidentiary record.  *Id.*

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

In the April 20, 2018 decision, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 1, 2012, the protected application date. Tr. 549.

Next, at step two, the ALJ determined that Plaintiff has severe impairments of lumbar spine degenerative disc disease, mild bilateral hip osteoarthritis, bipolar disorder (not otherwise specified), depression, PTSD, anxiety disorder, and bipolar 1 disorder. However, at step 3, the ALJ found that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 549-51.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations: he can frequently climb stairs, balance, and crawl; he can occasionally climb ladders, stoop, kneel, or crouch; he can perform tasks with simple instructions; and he can have occasional interaction with coworkers and supervisors but no interaction with the public. Tr. 551. With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Tr. 557. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as basket filler, inspector hand packager, and garment sorter. Tr. 558. Thus, the ALJ determined that Plaintiff is not disabled. *Id.*

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's

decision.  *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Although Defendant concedes that the ALJ's decision is not supported by substantial evidence and that Plaintiff is entitled to judgment, Def.'s Br. & Mot. to Remand 1-2, ECF 18, Defendant contends that the appropriate remedy is to remand for further proceedings because the record does not conclusively establish that Plaintiff is disabled.  Plaintiff argues that the remand should be for an award of benefits because the record is fully developed, Defendant identifies no factual issues to be resolved, and overwhelming evidence establishes that Plaintiff is disabled.

In social security cases, remands may be for additional proceedings or for an award of benefits.  *E.g., Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence,

whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Based on Defendant's concession that the ALJ erred, the first part of the three-part test is met. Def.'s Br. & Mot. to Remand 4 ("The Commissioner concedes that part one of the *Treichler* test was met, because the ALJ erred in evaluating evidence in determining that Plaintiff was not disabled."). Thus, the focus of the dispute is on the second and third steps of the remand analysis.

As Defendant correctly notes, the presence of evidentiary conflicts precludes satisfaction of the second part of the test. *Id.* at 3 (citing *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (under the second step of the remand analysis, the district court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved.") (internal quotation marks omitted)). In support of its contention that the record is not fully developed, Defendant points to four medical opinions of Plaintiff's mental limitations during the relevant period beginning May 1, 2012 (Plaintiff's application date) through April 25, 2018 (the date of the second ALJ decision). Def.'s Br. & Mot. to Remand 6. Defendant contends that these four opinions conflict with opinions from Plaintiff's treating psychologist Damon Tempey, Ph.D., and treating Physician's Assistant (PA)

Christopher Wallis.  Defendant's position is that this allegedly conflicting evidence requires a remand to the ALJ for further evaluation.

The first two opinions Defendant relies on are from state agency non-examining psychologists who opined that Plaintiff had only mild functional limitations.  Tr. 79, 96  (Dec. 2012 Op. by Dorothy Anderson, Ph.D. and Sept. 2013 Op. by Joshua Boyd, PsyD., that Plaintiff has mild impairments in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and had no episodes of decompensation).

In her first decision issued in January 2015, the ALJ gave these two opinions "little weight" because they found Plaintiff's mental health conditions non-severe.  Tr. 22.  Instead, the ALJ explained, the evidence supported the presence of symptoms causing difficulties with Plaintiffs's employment, especially in regard to his social interaction.  *Id.*  In the ALJ's opinion, these "DDS psychologists failed to adequately consider the full range and duration of symptoms in making their assessment."  *Id.*  In her second decision issued in April 2018, the ALJ adhered to her previous determination of assigning little weight to these opinions.  Tr. 554 (weights assigned to opinions other than those assigned Dr. Tempey and Mr. Wallis "are as described in the previous decision").  The ALJ has already concluded that the record establishes more severe limitations than determined by these practitioners.  Given that the ALJ herself has previously found, twice, that these opinions are entitled to little weight, they provide no basis for remanding the case for the ALJ to consider them again.

Next, Defendant relies on the opinions of consulting psychologist Julie Redner, Ph.D, and consulting psychiatrist Gale Smolen, M.D.  Def.'s Br. & Mot. to Remand 6-7.  Dr. Redner conducted a neuropsychological evaluation of Plaintiff in February 2012 which included an

extensive interview, review of records, and administration of several psychological tests.  Tr. 287-93.  She assessed him as having Bipolar I Disorder and PTSD with panic attacks, with a provisional diagnosis of Cognitive Disorder Not Otherwise Specified.  Tr. 287.  Her testing showed an individual of overall average intellectual abilities.  *Id.*  Plaintiff's academic skills were relatively strong.  *Id.*  But, he was in the low average range regarding his attention span and he had "[a]reas of relative weakness" in his performance on tests of rapid clerical skill, knowledge of vocabulary, verbal fluency, and confrontation naming.  *Id.*  His verbal learning was in the low average range on a list-learning task.  *Id.*  Plaintiff reported a severe level of depressive symptoms and a history consistent with bipolar disorder.  *Id.*  He also reported symptoms consistent with PTSD with panic attacks related to a history of sexual and physical abuse as well as other traumas.  *Id.*

Dr. Redner recommended that Plaintiff receive ongoing mental health treatment and monitoring.  Tr. 287.  She opined that he would likely do best at work that minimized public contact.  Tr. 288. She also believed he might benefit from the services of a job coach in order to assist with learning and to "problem-solve around any potential interpersonal or anger management issues may might arise."  *Id.*  She suggested "[t]he use of notes or another auxiliary memory system[.]" *Id.*  Additionally, she recommended that any return to work be coordinated with Plaintiff's mental health provider.  *Id.*  Dr. Redner wrote that Plaintiff should not return to work before his mental health provider believed he was ready to do so.  *Id.*  She explained that because of his combination of problems, she believed his current prognosis for successful employment was extremely guarded.  *Id*

In her first opinion, the ALJ gave Dr. Redner's opinion "some weight with regards to

[Plaintiff's] social functioning limitations." Tr. 23.  The ALJ rejected the recommendation of a job coach as a "suggestion and not a prerequisite of employment." *Id.*  She also found that similar to the job coach recommendation, "taking notes might be helpful but there is no evidence that the claimant would be unable to perform a simple task without taking notes." *Id.*  Later in that first opinion, the ALJ gave "little weight" to the opinion of Dr. Tempey . Tr. 23.  The ALJ did not, however, base this determination on any conflict with Dr. Redner's opinion.  *Id.*

In her August 2017 Opinion & Order, Judge Russo evaluated the ALJ's treatment of Dr. Tempey's opinion.  Tr. Tr. 602-05.   In concluding that the ALJ erred in this regard, Judge Russo explained that "there is no evidence in the record from an examining or treating source, . . . to contradict Dr. Tempey's opinion." Tr. 604.  Included in the records cited in support of this statement is Dr. Redner's report and opinion.  *Id.*  Thus, Judge Russo determined that Dr. Redner's opinion does not contradict Dr. Tempey's opinion.  Next, in assessing the ALJ's treatment of PA Wallis, Judge Russo referred to her discussion of Dr. Tempey's opinion and additionally noted that the record "overwhelmingly reflects that plaintiff continued to suffer significant psychological symptoms despite full medication compliance." Tr. 606.

In the ALJ's second opinion, the ALJ remarked that Dr. Redner had noted "near-normal examination results," including "low average cognition and memory, normal speech, cooperative attitude, and normal persistence." Tr. 554.  She relied on those "near-normal mental status examination results," along with other evidence, to conclude that Plaintiff's mental impairments imposed limitations only to unskilled tasks and limited interaction with others.  *Id.*  Later, the ALJ noted that Dr. Redner's opinion contradicted Dr. Tempey's opinion.  Tr. 555.  In support of this statement, she cited to test result indicators of Plaintiff's low to average cognition and

adequate memory, and to other observations such as his normal speech, that he was cooperative, and that his concentration was variable with a low frustration tolerance but he was appropriately persistent. Tr. 555. The ALJ did not assign a weight to Dr. Redner's opinion. She never mentioned Dr. Redner's limited social interaction limitation or the recommendations for a job coach, note taking, or coordinating Plaintiff's return to work with his mental health provider.

Defendant argues that Dr. Tempey's and Mr. Wallis's opinions, which find Plaintiff more limited than the ALJ determined, contrast with Dr. Redner's opinion. In making this argument, Defendant fails to acknowledge Judge Russo's prior determination that Dr. Redner's opinion does *not* contradict Dr. Tempey's opinion. Defendant also fails to acknowledge that Judge Russo already determined that the record supported PA Wallis's opinion. Furthermore, while the ALJ noted in her second opinion what she characterized as "near-normal" test results obtained by Dr. Redner, the ALJ failed to discuss any of Dr. Redner's specific recommendations which were based on Dr. Redner's holistic consideration of the test results, her extensive in-person interview, and Plaintiff's treatment records. The second ALJ opinion's narrow focus on test results does not undermine Judge Russo's prior determination that Dr. Redner's opinion does not contradict Dr. Tempey's opinion. Based on this record, I agree with Plaintiff that there is no useful purpose to remanding this case to allow the ALJ to consider Dr. Redner's opinion a third time.

Dr. Smolen evaluated Plaintiff in July 2016, after the first ALJ opinion. Tr. 721-26. She assessed Plaintiff with Complex PTSD, Probable BiPolar II Disorder vs. Major Depression, and Borderline Personality Traits. Tr. 725. Dr. Smolen reviewed limited mental health clinic records and conducted an interview which included a mental status examination. Tr. 721-26. She found that the "intellectual portion of [Plaintiff's] mental status exam was looking alright." Tr. 725.

Dr. Smolen added that Plaintiff would be able to remember and understand with no impairment and could concentrate and attend with "possibly mild impairment." *Id.* She opined that he could not get along with people "on a purely mental basis." *Id.*

In her April 2018 Opinion, the ALJ gave "some weight" to Dr. Smolen's opinions that the "intellectual portion" of Plaintiff's mental status was "looking alright," that he was unimpaired in the ability to remember and understand, and that he was mildly impaired in the ability to "concentrate and attend." Tr. 554. In rejecting Dr. Tempey's opinion, the ALJ cited to Dr. Smolen's report for the "near-normal examination results," the normal intellectual ability, the unimpaired ability to remember and understand, and the mild impairment in the ability to concentrate and attend. Tr. 555. The ALJ found these opinions inconsistent with Dr. Tempey's opinion.

Defendant argues that Dr. Smolen's limitations conflict with the opinion of Dr. Tempey and that this conflict justifies remanding for additional proceedings to allow the ALJ to re-evaluate the evidence. I agree with Plaintiff, however, that Dr. Smolen's opinion is not inconsistent with Dr. Tempey's opinion as to key observations and findings and therefore, any conflict between Dr. Tempey's and Dr. Smolen's opinions does not warrant a remand for additional proceedings.

Dr. Smolen's opinion that Plaintiff's intellectual abilities were normal is consistent with Dr. Tempey's opinion that Plaintiff "may have the intellectual capacity to carry out jobs[.]" Tr. 542. Dr. Tempey further explained, however, that he "[did] not think [Plaintiff's] emotional disabilities would allow him to carry out the duties." These emotional disabilities referred to by Dr. Tempey find support in Dr. Smolen's notes of Plaintiff burning himself "a lot" and having

daily suicidal thoughts with a plan involving jumping off a familiar cliff. Tr. 724-25. Although the ALJ appeared to endorse Dr. Smolen's finding that Plaintiff had a mild impairment in the ability to concentrate, Tr. 554, the ALJ herself found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. Tr. 550. Thus, the ALJ's opinion is internally inconsistent and her own finding as to the moderate concentration limitations undermines any reliance she placed on a contrary concentration-related assessment by Dr. Smolen.

Additionally, Dr. Smolen opined that based on his mental health issues, Plaintiff did not "get along well with people." Tr. 725. This is not inconsistent with Dr. Tempey's assessment that Plaintiff had a moderate limitation in the ability to work in coordination with or proximity to others, that he had a severe limitation in the ability to interact with the general public, and that he had severe limitations in the abilities to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Tr. 377-78. Finally, Dr. Smolen expressed no opinion on whether Plaintiff would need to take unscheduled breaks from work or be absent from work due to limitations based on the Complex PTSD and Probable Bipolar II Disorder she diagnosed him with. The absence of an opinion on such limitations effectively means there is no conflict with those limitations as opined by Dr. Tempey. Overall, Dr. Smolen's opinion aligns with Dr. Tempey's opinion. Defendant does not identify inconsistencies requiring that the ALJ evaluate Dr. Smolen's opinion a second time.

None of the four medical opinions relied on by Defendant reveal inconsistencies in the evidence requiring remand for additional consideration by the ALJ. Defendant identifies no other part of the record requiring further development. Accordingly, further administrative

proceeding would serve no useful purpose.  As a result, the second part of the third-part test is satisfied.

Under the third part of the test, the Court considers whether the ALJ would be required to find Plaintiff disabled if the improperly discredited evidence is credited as true.  Dr. Tempey opined that Plaintiff had severe limitations in several abilities, including the ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. 378.  He also opined that Plaintiff was severely limited in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms.  *Id.*  In February 2018, the Vocational Expert (VE) testified at the second hearing that such limitations would preclude competitive employment.  Tr. 585-87.  This satisfies the third part of the test because when Dr. Tempey's assessment is properly credited, the VE's testimony establishes that the ALJ would be required to find Plaintiff disabled.

Additionally, Plaintiff's disabled status finds support throughout the medical evidence in the record.  First, PA Wallis, who saw Plaintiff regularly beginning in January 2013, stated that Plaintiff's back pain and bipolar disorder prevent him from obtaining or maintaining employment.  Tr. 264.  In July 2014, PA Wallis reiterated that Plaintiff is unable to maintain gainful employment due to his physical and mental abilities.  Tr. 374.  Although these are conclusory opinions from an "other source," PA Wallis was a treating practitioner whose opinions are consistent with a finding of disability.  *See also* Tr. 606 (Judge Russo observed that PA Wallis's "chart notes from 2013 and 2014 document plaintiff's persistent mental health problems and, as such, are consistent with his opinion letters.").

Second, Plaintiff's history of Global Assessment of Functioning (GAF) scores suggest

that he has major impairment in several areas.  Plaintiff had several GAF scores assessed

between 2007 and 2015.  Tr. 324 (GAF score of 40 assessed by Don Nelson on Oct. 22, 2007 and

again by Curtis Miller on Oct. 23, 2007); *id.* (GAF score of 48 assessed by Linda Young in Nov.

2007); Tr. 319 (GAF score of 35 assessed Nov. 17, 2011 by Dr. Tempey); Tr. 287 (GAF score of

52 assessed by Dr. Redner in Feb. 2012); Tr. 314 (GAF score of 51-60 assessed in Apr. 2012 by

Joel Breen); Tr. 308 (GAF score of 35 assessed as of June 20, 2012 by Dr. Tempey); Tr. 533

(GAF 40 assessed by Nicole Poell on July 29, 2013); Tr. 458 (GAF 35 assessed by Dr. Tempey

on Apr. 2, 2013); Tr. 713 (GAF 45 assessed by Dr. Tempey on Apr. 9, 2015).

Six of these scores were between 31 and 40 which, under the 4th edition of the American

Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders* (DSM-IV),

indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in

several areas, such as work or school, family relationships, judgment, thinking, or mood . . . ."

DSM-IV at 32.  These six scores between 31 and 40 were assessed by four different practitioners

over a period of almost seven years.  Two of the ten GAF scores assessed between 2007 and

2015 were between 41 and 50 which, under the DSM-IV, indicates "[s]erious symptoms (e.g.

suicidal ideation, severe obsession rituals, frequent shoplifting) OR any serious impairment in

social, occupational, or school functioning (e.g. no friends, unable to keep job)." *Id.*  Finally, a

score between 51 and 60, of which there were two during this time period, indicates "[m]oderate

symptoms" or "moderate difficulty in social, occupational, or school functioning[.]" *Id.*

The fifth edition of the DSM dropped the GAF scale for "several reasons."  DSM-V at 16.

But, all but one of the 31-40 GAF scores here were assessed before the DSM-V was published

sometime in 2013, meaning they were assessed under the DSM-IV.  It's also possible that Dr.

Tempey's score of 35 assessed early in 2014 was under the DSM-IV as well. Accordingly, while they are not controlling, they are relevant to the disability analysis. *Garrison*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). Consistent scores rendered over time by different practitioners suggests they are "not inconsequential to the ultimate" disability determination. *Skelton v. Comm'r*, No. 6:13-cv-0117-HZ, 2014 WL 4162536, at *10-11 (D. Or. Aug. 18, 2014). Here, the majority of the GAF scores show major impairments and support remanding for an award of benefits.

Third, after rendering his functional assessment in October 2013, Dr. Tempey continued to opine that Plaintiff suffered disabling mental health symptoms. *See* Tr. 542 (Feb. 2015 letter stating that "[a]t the best of times, [Plaintiff's] severe depression and PTSD symptoms are barely under control when he's taking appropriate medications"); Tr. 719 (Dec. 2015 opinion that "[t]alk therapy not effective in reducing client's chronic depression as measured by total score on the PHQ-9 . . . Client's psych meds were being managed by [PA Wallis] , who tried a variety of psychotropic meds, without success."). Although these are not specific functional limitations, they address the ongoing nature of Plaintiff's mental health impairments.

Fourth, psychotherapy chart notes from Jeremy Springer, L.C.S.W., who worked with Plaintiff between July 2016 through 2017, show that Plaintiff experienced a depressed and angry mood, dysphoric mood, euthymic mood, significant feeling of hopelessness, as well as "strong symptoms of depression," "[o]ngoing and previously documented experience of thoughts of death and thoughts of harm to others," "sleeping restlessly for 12 hours out of 24," and that Plaintiff "[c]ontinues to burn and cut [himself] at times." Tr. 666, 672, 682, 692, 693, 705. These observations support the continued presence of disabling symptoms.

Fifth, Dr. Redner herself recognized that Plaintiff's prognosis for successful employment

was extremely guarded.  Notably, she opined that Plaintiff should not return to work before his mental health providers believed he was ready to do so.  She clearly recognized his severe social impairment by recommending a job coach to "problem solve" around interpersonal or anger management issues.  These opinions recognize the seriousness of Plaintiff's mental impairments and support a finding of disability.

Finally, Judge Russo previously recognized that "the record is replete with evidence demonstrating the seriousness of plaintiff's mental impairments; although he engaged in regular treatment for several years, he consistently experienced psychological symptoms at a level which significantly interfered with his daily functioning."  Tr. 604.  And, "[d]espite some waxing and waning of symptoms, these issues persisted even during periods plaintiff was fully compliant with his medications."  *Id.*

The record as a whole supports a finding of disability.  The application of the three-part remand test shows that remand for an award of benefits is appropriate in this case.

CONCLUSION

The Commissioner's decision is reversed and remanded for an award of benefits.

IT IS SO ORDERED.

Dated this ____17____ day of ____Sept_____, 2019

Marco A. Hernandez
United States District Judge